Case No. 253373 Millennia Housing Mgmt et al. v. US Dept of Housing and Urban Development et al. Argument not to exceed 15 minutes per side. Mr. Sullivan, you may proceed for the appellants. May it please the Court, Peter Sullivan on behalf of the appellants, I'd like to reserve two minutes for rebuttal, please. Very well. Thank you, Your Honor. Your Honors, the Constitution guarantees the right of a jury when faced with traditional legal claims. This is a closely guarded protection with ancient roots. HUD's administrative proceedings fundamentally subvert that right. HUD is seeking over $5 million in punitive civil penalties for contract breaches in violation of the Seventh Amendment and Article III. Appellants ask this Court to reverse the district court and permanently enjoin the HUD CMP actions in the administrative The public rights exception has no application here. The Seventh Amendment applies to suits at common law, and the Supreme Court in jarcossy explained that suits in common law means claims that are legal in nature, regardless of whether they have statutory origins. When a claim is legal in nature and implicates private rights, the Seventh Amendment presumptively What do you think we do with the fact that, granted, you have a contract with HUD, but what do we do with the fact that that contract is, in a sense, embedded in what does look like a regime of public benefits, public rights, which I think is basically the same thing? HUD is subsidizing these mortgages, etc., and the contract itself is an instrument to provide public benefits. Why wouldn't that take this out of your classic 1789 suit at Westminster? Your Honor, some key distinctions to point out. Even in cases where public rights are arguably implicated, courts have still found that civil penalties fall outside of the public rights exception. The perfect example is Sun Valley Orchards in the Third Circuit. Which the court just granted cert in. True enough. So we'll see where that goes. True enough. Anyway, just go ahead. In that case, the Department of Labor sought civil money penalties for labor certification violations. And there are a lot of very close similarities between those labor certification contracts essentially and the statutory scheme there, and the contracts in this case and the underlying statutory scheme. And the court in Sun Valley found that despite the connection to an immigration program, which would traditionally implicate a public right, the exception did not apply, because fundamentally what was at issue there are fundamental legal claims adjudicating private rights, the deprivation. Well, if the court disagrees, do you lose this case? If the court disagrees that... With the whole Sun Valley analysis that you recited, that's now going to be reviewed by the Supreme Court. I think it depends on how the court comes out here, Your Honor. I suppose they could find that there is some very narrow exception akin to Atlas Roofing, which the court in exceptionally narrow and cabineted. I suppose that is a possibility, in which case these claims here, there'd be no bearing. But Your Honor, I think what's important to recognize about the public rights exception, and that this court has in fact recognized, is that the exception has sharp limits, and the court recognized that in Starbucks against NLRB at 481. In here, HUD's claims for punitive C&Ps implicate traditional legal claims and private rights. Can you explain to me, you seem to concede that HUD can kick you out of the program, what they call debar you, without going to an Article III court. I mean, obviously you wouldn't get a jury trial for that, because that's an equitable claim, but you think that if the public rights exception doesn't apply, that you would have that claim be heard in an Article III court. But you seem to say no. So I'm just wondering why you give that up, or explain to me how, yeah. Yeah, thank you, Your Honor. I think there's a distinction here between participation in the program, and then the penalties that are being sought for violations of the contractual agreements. We don't dispute that HUD has the ability to adjudicate whether an entity can participate in the program, be debarred from the program, adjudicate whether HUD is going to- But why? I mean, if the public rights doctrine applies, I mean, maybe I'm thinking about this wrong, but if the public rights doctrine applies to this area, then you'd think they would have to take the whole thing in-house. If the public rights doctrine doesn't apply, then you'd think the whole thing would have to be in Article III, right? Because it's an equitable claim, right? They can't kick you out unless you knowingly violated the statute. So there has to be some kind of adjudication of that claim. And I guess I don't know why you think only the civil monetary penalties go to Article III, and the equitable claim, which is something we hear in Article III courts, doesn't. So I think the rights at issue here, or the analysis is narrow. What matters is the remedy and the nature of the claim, but we have to look specifically at the civil money penalties. Just because there are related public benefits programs involved in the scheme doesn't necessarily mean that every single claim is thus subject to the public rights exception. So if somebody was defrauding- So you seem to conceive that somebody applying for social security benefits, that's a public right. And what if the Social Security Administration determined that someone was defrauding the Social Security Administration and sought civil money penalties as a deterrent to future fraud? They could bring that claim in-house, or they have to bring that claim in Article III? The claim for civil penalties would have to be brought in Article III with the benefit of a jury. So your rule is just, if it's a civil money penalties claim, that's it. That's all- There's no exceptions? I don't think it's quite that bright line, Your Honor, but that is a very- Are there civil money penalties claims that could be brought in before the agency? Not before this agency, not before HUD, Your Honor, but- An agency. An agency, yes. So in- When, when the public rights doctrine applies. That's why I'm trying to figure out what- In areas where the government, the political branches have traditionally held exclusive dominion over the field, such as immigration, but specifically allowing the entrance, collection of revenues for tax purposes. Just, you think it's just the historic limits? Yes, yes, Your Honor. And then Social Security is outside of that? I mean, look, I think we only have one case about Social Security. Everybody seems to give up Social Security. As far as I can tell, there's one case from the Fifth Circuit from 1993 that says Social Security, but everybody, all the litigants seem to think Social Security is a core public right. So I think the line here- That's not right. I think the line here is that if the suit is in the nature of a common law action, it presumptively concerns private rights, which come along with the benefit of a jury and Article III adjudication. Right, but then there's this exception. So I'm just trying to get you to tell me what the contours of the exception are, and you view it. And even the Supreme Court has grappled with the contours of the exception. Or it hasn't. But this court and other courts, so this court specifically in Starbucks, noted that the exception has sharp limits. And the Fifth Circuit and Jharkhasi both recognized that the exception is a narrow extra-textual exception to presumptively mandatory Article III adjudication of traditional legal claims. The court in Jharkhasi stated matters concerning private rights cannot be removed from Article III courts and established what I think essentially amounts to the categorical rule if it's in the it must be heard by an Article III court with the benefit of a jury. The government argues the exception applies because appellants are voluntary participants in the program and because the nature of the scheme and the government's involvement foreclose Article III adjudication. But that's not so, for two reasons. First, the key distinction here is what HUD is seeking in this proceeding, unlike in Austin v. Shalala, which the government relies on heavily. The government was seeking the specific remedy of equitable disgorgement of their Social Security overpayments. But here, HUD is seeking the imposition of civil penalties to deprive the appellants of private property, which is a fundamental private right and traditional legal claim. Second, the government argues that the government's participation in the program forecloses Article III adjudication. Not so. Jarczy's holding did not turn on whether the government was a properly named party to the suit. Rather, it turned on the substance of the suit. Again, the substance here is fundamentally legal in nature, seeking punitive civil money penalties for violations of those contractual obligations. The imposition of punitive CMPs that seek to deprive a party of property is a quintessential private right requiring a jury in Article III adjudication. What is your position on Ortega and Axalia? Those were both cases with civil money penalties. And I think the distinction there, Your Honor, is they fell within those distinct carve-outs where the government held exclusive domain over the field. Well, the government has exclusive domain over HUD and on this program. The government has traditionally had exclusive domain over the granting of public benefits. However, the government has never had exclusive domain over regulation of contract claims. Here, the issue is that contract and debt claims sound like common law, and the Constitution requires that those be heard in an Article III form. Isn't it a matter of semantics? I mean, I want to make sure whether it's Axalia or Ortega, but in one of them, right, there was an issue of packaging and labeling, and they argued that it was a negligent plan, right? I mean, so why wasn't that common law negligence? Like, it seems like you can put whatever label you want on these things. I believe the Fifth Circuit and AT&T also found on similar grounds that there was claims akin to negligence in that and found the public rights exception did not apply. What matters is that it doesn't necessarily have to be a directly one-for-one common law claim in the administrative proceedings, as long as there's our common law analog, which there is here. And this court noted in Starbucks that monetary penalties designed to punish and deter, that is the very definition of legal relief. And so if the agency seeks civil penalties to punish and deter, as is the case here, the Seventh Amendment applies. In Ortega, I think the common law analog would be fraud, and in Axalia, it would be negligence. But the courts didn't buy it. Your Honor, I see the amount of time I'd like to answer. I think that the key distinction here is the fact that we have a traditional legal claim implicating private rights, and there is no carve-out in this particular case that would trigger the public rights exception. And for those reasons, we would ask this court to reverse the district court and issue the injunction. I just have one more question. Go ahead, if you have further questions. I just want to ask about timing. So we're here on appeal from a permanent, denial of a permanent injunction. Yes, Your Honor. Your claim of injury is that you're before the agency in what you claim is an unconstitutional process. The ALJ has now issued his award. I understand you have some appeal time. What is that time? So I take it that you think you're still subject to the ongoing injury. Yes, Your Honor. When will you not be subject to the ongoing injury any longer? I think, and I can't say, put an actual time on it, but until such time that the Secretary either affirms the ALJ's decision or sends it back, will continue to be in the proceedings, and then comes back to the Secretary if necessary. And you have taken an appeal? We are planning on taking an appeal to the Secretary. And you have 30 days, 60 days? I believe it is 30 days. Very good. We'll have your rebuttal. We'll hear from the government. Thank you, Your Honor. May it please the Court, Daniel Aguilar for the Department of Housing and Urban Development. So I take the agreement between the parties to be that HUD can expel somebody from the mortgage insurance program without first resorting to an Article III court. And the reason that that's true is because it's a public right. Yeah, I mean, I think 1731, there's really a marked contrast between what's going on there and 1735, 1731A. And I mean, just, I don't mean to jump on you, but I was going to ask you about this particular point, because the provision of the subsidy or participation in the program, that really has no analog in some entitlement that would have been litigated in legal courts at the time of the framing, right? And so that itself, the participation part, would seem to be a classic public right that could be determined, presumably, just as described in 1731A. You could do it in a conference room. You've got counsel. You've got notice. We're going to make a finding by preponderance, and if we make it, we're going to kick you out. Maybe there's some kind of judicial review later. Maybe not. But when you go into court and seek to enforce an agreement that you have with them, and seek not to kick them out of a government program, but to have them write the government a check for $7 million, why isn't that dealing directly with a private entitlement, rather than this public largesse? Right. So I think that that's the key point that we've been discussing this afternoon. I'm happy to engage with that. I mean, I'm just seeing a distinction there, just to be clear. I agree. I think the distinction is one that they're trying to draw, which is that when something is dealing with civil monetary penalties, it sounds in a legal claim with a legal remedy, and therefore falls outside the public rights domain. I think that fails analytically for these reasons, if I can just spell them out, and happy to further address. Why you're here. Exactly right. I was just trying to say it takes a little bit of time. The area, as you noted, as the Supreme Court noted, is somewhat arcane. So when you have the legal remedy, that matters for the Seventh Amendment analysis, right? Because the Seventh Amendment is talking about legal claims for more than $20. The Article III analysis is kind of more fundamental. Regardless of whether it's legal, or equitable, or an admiralty, the question is, does it involve private rights or public rights? So I think for the sake of the money, that actually doesn't matter as much for whether it's a private right or a public right. What matters is, what is the right at stake? So I think it's easiest, most clear, as everybody agrees, about expelling somebody from the program. Their argument is, when you're seeking to take our money from us for a statutory violation, and I just want to emphasize that, this has to be based on a violation of the statute. That's the only authority for seeking civil penalties under 1735F, subsection C. Yes? I hate to interject. No, please. Is that, isn't that statutory violation embodied in the contract? Yeah, the contract repeats it. And explicitly in the record, it says, you're agreeing that we can seek civil money penalties under this statute signed here. And the signature is directly below the statutory citation. Well, and 1735F, I mean, expressly conditions this application to parties that have agreed to terms. Right, that's how you implement the program. So the statute, unlike the immigration case, it sounds like, Sun Valley, I mean, the statute is not a standalone authority to come seek money from them. They must have engaged in or agreed to, you know, entered an agreement with the government, or else none of this applies. They could build their apartment building and do everything the same and not have the subsidy and not have the agreement. And none of this, they could do whatever they want. Exactly. It's an entirely voluntary program. They've chosen to take advantage of federal funds to back their mortgages at very favorable terms. I think it's 0.25%. But that's implemented by contract. So the agreement is the basis of liability. It's a scene in Guanon, for sure. I would, I will agree with this stuff. It is necessary for you to agree to enter into the program. We effectuate that with an agreement. The basis for the penalty is a statute. And just to give another example, when somebody agrees to enter into Medicare billing, when you're a physician and you want to take advantage of taxpayer dollars to reimburse you for medical agreements, you enter into an enrollment agreement, a provider agreement to effectuate that. If somebody is bilking the government for unnecessary medical treatment or a treatment that falls outside of Medicare reimbursement, we can seek to recoup that. And we can probably impose a civil monetary penalty, indeed, because that's the definition of a federal public benefit. The Supreme Court's been clear. There are core areas of privacy. Is that actually how it works? If somebody's defrauding, if a doctor's defrauding Medicare by pumping the bills, don't you bring a civil fraud action or a criminal fraud action against them? Usually there is a mechanism through a False Claims Act, if that's what it is, to then go into court and do that. The False Claims Act also notes it's not displacing any administrative remedies that might be  And so I think this gets into— It's a practice, though, I think. I can't speak to the practice, Your Honor. I don't actually know how it's effectuated. But just going on here, there are core areas of public rights to immigration, taxation, the provision of federal public benefits, dating back to the founding with giving pensions to Revolutionary War veterans. I mean, pensions aren't, write me a check for a million dollars. And so I think the closest and most on-point precedent to that question is oceanic steam navigation. It's a 1909 case that definitively decided this issue. If you look at page 323 of the opinion, it's laying out Petitioner's argument. Petitioner was fined $100 for bringing somebody with a disease into the United States knowingly. I think it was tuberculosis. $100 amounts to about $3,400 today. That was imposed by the commissioner. There was limited judicial review. Their argument was this imposition of a money penalty is not necessary for the purpose of the immigration laws. It imposes a punishment and requires money to be taken in payment of a fine. And therefore, deals with personal and property rights, which are protected by the Constitution. I take that to be plaintiff's argument here too. It does. The Supreme Court then rejected that at pages 339 to 40. It said, you can enforce prohibitions of this because nobody has a vested right in coming into the country, bringing other people into the country. So similarly, we are not regulating the mortgage market writ large. If they want to seek private insurance or just forego mortgage insurance generally, they are free to do so. There is no statutory authority for the HUD secretary to bring any action against them for that. It is when they avail themselves of the scheme that Congress has enacted that then we can enforce those prohibitions by kicking them out of the program, as we've done, and by imposing penalties. Because otherwise, the system that has been set up is, you're right, you can undermine the collateral for the loan. You can take money away from the purpose of the public program, providing houses to Americans. And we essentially can kick you out, but you're free to have basically taken the money and violated the terms of the program. There's a reason why Congress was able to enact it, and it's because at its core, it's its constitutional conditions on the permissible restrictions and prohibitions we place on a benefits program. Right, but it's in a contract. It's not like, I mean, again, Social Security, everybody thinks it's public rights. I'm not quite sure because Jerry Smith said so in 1993. But everybody thinks it's a public right, but that's a government handout. You're not doing anything in exchange except existing. Right here, they are giving you a benefit. So the fact that they might be able to give people housing as a benefit, just as providing somebody with disability benefits is a benefit because we want people to be involved in society and being able to live out their lives. But isn't this different because you have a contract with the providers, and they agree to do certain things, like set aside a certain number of units for low-income housing, and they agree to keep the apartment in a certain standard of repair, and they agree to do all these things, and in exchange, they get a favorable premium rate on their mortgage insurance? There's consideration on both sides. The first words of the contract, the very first words of the regulatory agreement, this one I'm looking at is page 795, page ID. It's for with the poor city capital, literally. In consideration of the endorsement for insurance by the secretary, et cetera, you've got to do all this stuff. And so I understand your point that the government, it's voluntary, and in a sense, it's largesse that the government is subsidizing their mortgages, but neither do they have to do all this stuff in this fine print, except all these restrictions on their own conduct. They could just build their apartment building and go on with their business without the government subsidy, in theory. And so why isn't this just simply a bargain for exchange between the government and them, and what you're calling public right is actually something you're providing as consideration? So I want to delineate, I think, between two things. Let's assume that there was no statutory program here, and Congress has said, here's some appropriations, decide what you want to do with it. And if then they go out and then decide, let's do all these contracts, I think that's a government contracts case. That gets into an area of law that I think is a lot different. It's about going to the Court of Federal Claims. The Federal Circuit has practice on this. I think that's a more complicated case, potentially. You then have this case in which the contract is not something that HUD came up with on its own. It's basically repeating the terms of the statute. That's something that Congress already decided. So therefore, this scheme would still work, perhaps not as well, if you just said, check this box to sign up. You agree to abide by the statute and regulations. Well, that's an agreement, too. It's an agreement, too. But I think to the extent that what plaintiffs are urging is that because there is a contract, it's necessarily a private right. I think it falls apart if we can still exist in that world. The fact that you do have a world. I'm not tracking that. Sorry, just agreeing, I want to participate in this program. I want you to have this insurance. If it's a voluntary bargain for exchange, I mean, however simple the form, I mean, if it's something that, you know, and what they tell us was a contract in 1L, contracts class, then, I mean, I don't think the form matters. If it's a bargain for exchange, and each side is giving consideration in the form of reciprocal obligations, and those often take the form of money, and you're going to do stuff we want. Why, I mean, this doesn't look that different from most contracts. The reason it's a different contract is it's with the United States. It's with the United States. But if the claim here, really, is that the government, any time the government enters into a contract and provides benefits, provides money, provides whatever in its massive resources and power it can provide to a private party, and they enter into something called an agreement, which talks about consideration, if the argument you're making is that the government, at its choosing, can pull enforcement of that contract out of Article III courts and send it to some agency to do this the way they do it, like, really? That's not my argument. Okay, so how is your argument different from that? So when the agreement is with the United States for the purpose of effectuating the statutory scheme that Congress has enacted for using federal funds for a particular public benefit— Government always has a purpose for what it's doing. Not always statutory. Not always something that's been created by Congress. Not for explicit public benefit purposes. And I think to the extent that you're doing that with things like the Veterans Administration and providing payments that way with Social Security, with Medicare, and other things of that nature, this is not fundamentally different from those. And I think the reason that that matters is because— You just said you don't even know how the Medicare claims are handled. So I guess one question I have is, do you have an example of another contract with the government that looks like this, where you seek civil monetary penalties and it's not adjudicated in an Article III court? Like, either that a court has said, yes, it'd be better if there's one where a court has said, yeah, that's cool, or even just an example of this is how it is. So when I spoke to Medicare, I was speaking generally. There are Medicare statutes that I do know of where the civil money penalties are imposed administratively through HHS with review in the courts of appeals. There is two appeals of those currently pending. One is going to be argued in front of the Fourth Circuit on May 5th. It's called Sligo Creek. As we've explained there, for the reasons that are equally applicable here, that is a federal public benefit scheme. And that's the reason it falls within core public rights. Can you cite to us any authority in any court in the history of the United States where the court said that the government's enforcement of a contract, of an agreement, which is what this is. It's an agreement that incorporates statutory obligations, but it's a contract, where any federal court in the history of this country has recognized enforcement of a contract with the government, between the government and a private party, as a matter of public right that can be taken out of the Article III Courts. It's Seaboard Lumber by the Federal Circuit. We cited that in our brief. In Seaboard Lumber, it was a case that went to the Court of Federal— 1990 ones? I'm sorry? You had some 1990. And I'm not disparaging. I'm just trying to— Yeah, I mean, 1990 is the same time as Grand Financiera. Like, I think it's within— No, I'm not disparaging it. I'm just— Right. So Seaboard? Seaboard Lumber. And there, just to spell out the analysis, because it does— this is the map on that the Federal Circuit does. You can bring contract disputes against the government in the Court of Federal Claims as an Article I Court. The government can also bring counterclaims against you in that suit. Under Stern v. Marshall, if what your counterclaim was was a matter of private right, that wouldn't be acceptable. The Federal Circuit held the federal government can bring those counterclaims in that. I think that's getting into the separate question. That's why I coordinated off as being potentially more difficult. But yes, that's something that the courts have considered before. I mean, did the court say that enforcement of the contract was a matter of public right? It did it as a different analysis. It did it as a condition of waiving sovereign immunity. But I think under Stern v. Marshall, right, if it's still a matter of private rights, I don't know how those two line up. But at the court, I would just— I understand that you have the inclination here in this, where the questions have been going, that this is a contractual matter. But I just want to flag for this. I would dispute that premise for the reasons that Congress decided as a statutory scheme to embed it that way. And you could effectuate that without agreement by the parties. The only agreement would be you're voluntarily participating into this. The closest case on voluntary participation that I would point you to would be Thomas v. Union Carbide, which is the Supreme Court decision on pesticide regulations. And there, the court's saying, look, when you're voluntarily entering into the program, then Congress can say, you know, you two people arbitrate your dispute over here. You don't need to go to an Article III court. That's application and copycat stuff. Yeah. And it was intellectual property, right? Yeah. It was about the information for how the pesticide was registered and formulated. You know, just to be candid with you, I mean, I remember that case. And that case, to me, really illustrates— it's a good illustration of the difference between private rights and public rights. I mean, that—the entitlement at issue in that case, you know, your kind of work product in a pesticide application submitted to a federal agency, if I recall, right? Yes. I mean, that is a species of entitlement, just utterly alien and not even analogous to anything the English courts were doing, you know, in 1789 or whatever. And so that does seem to fall squarely into this sort of historic—I mean, it's outside of historically what the Article III jurisdiction was. So, you know, that was no problem. Whereas, again, yeah, it's incorporating a statutory regime, but this—I'm reading something where the things they agreed to do were in consideration for a contract. So this would be unprecedented, it sounds like, if we would say. I don't think so, Your Honor, for these reasons. Just like an oceanic steam navigation where the court held this isn't a private right because nobody has a vested right to bring people into the country. So, too, does nobody have a vested right to the access to the federal funds. But you see, it wasn't just an act of largesse. They earned it by agreeing, by giving consideration. It's—yes, I mean, it's a public thing that you don't have to—it's not vested, but when they get it by way of consideration, then it's vested legally in a way that, you know, running the ship to Ellis Island isn't. So, too, are veterans' benefits, right? You are entitled to veterans' benefits for considerable more service than is here, service for your country, and when it's the disability benefit, it's because you've been injured in the act of service. I mean, that's— Revolutionary War pensions, though, right? Going back to that, but I'm talking about modern, the modern VA benefits system. And I think that that's—if somebody wanted to analogize that to a contract, or if we put out paper contract, you know, your service agreement when you sign up, it is spatially ineligible to a breach of contract claim, but for the same reasons. If somebody commits fraud in terms of trying to enter into the country, and I think that's this court's decision in Elgabay, which was decided right after Jharkhasi, somebody would have committed marriage fraud trying to get into the United States. This court dismissed that in two paragraphs, saying, this is core public rights of immigration. The fact that you can analogize it to a fraud claim is of no moment. Yeah, but, so, I think what you're going to say in response to this is Atlas Roofing, but we do seem to have a lot, a lot of these public rights cases can be understood as historical exceptions where the government as sovereign has exclusive control. Like, nobody else can do these things. Nobody else but the government can grant a patent. Nobody else but the government can decide who gets to come into the country, but can decide about what goods come in, impose tariffs. All of these kinds of cases seem to be cases where only the sovereign can act. In your case, the government is acting as a mortgage insurer, and everybody can do that. So, why shouldn't I understand the cases that way? Because I think the fundamental difference is the use of federal funds, right, that you're using those to back up the system here. So, if I can just draw... So, can I just say, are we then back to Judge Kethledge's question about, like, well, okay, if you're contracting with the government, then it's just a different, we're in a different box. You're contracting with the government in exchange for, they're going to give you some portion of federal funding, a discount on your insurance rate, and whenever that is true, even though it might look like a private contract, because somebody else could do the same contract with you. Some private entity that wants to encourage low-income housing could also offer discounted insurance, right? But because the government is involved, by definition, it's a public right. No, I'm trying to make clear that's not the categorical argument. The condition I would place on that is it's pursuant to the statutory scheme that Congress enacted. I think the reason that matters is because if the government was just going out and regulating the pre-existing market that was already engaged in by private individuals and just drawing on the common law and doing all that, that's jarcossy. I think the difference, and Judge White brought it up, was the Fifth Circuit's decision in Ortega versus the Comptroller of the Currency. There, the claim was, you are a federally chartered bank under the National Bank Act. You have specific statutory obligations. You violated those. This is a money penalty. The Fifth Circuit upheld that against an Article III challenge because it said, there is a unique history here where you're getting that public benefit of the federal charter. You can get the state charter and operate entirely independent out of this, but when you choose to invoke the National Bank Act and all of the benefits that come with it, that does place you within the public rights scheme. I think this is an easier case than that one. I'm happy to answer any questions the Court has. Yeah, I'd like to ask a couple more. Please. In FCC versus AT&T, that case involves AT&T's alleged failure to protect its consumers' data, maybe a negligence claim. The government conceded that that was a public right. I mean, they didn't do it below, but by the time you got to the Supreme Court, you said, I'm sorry, it was a private right, not a public right. To be clear, we assumed for the sake of argument because we said the statutory scheme allows them a trial de novo in district court, and the Court's deciding the case on that basis. So what you're saying is you did not concede the point. You assumed the point for purposes of argument only. Yes. I believe that's how the cert petition was written. I was not personally involved in the case, but that's what I understood the cert petition to state. That's not what I understood. I understood the government had sort of retreated, but we can check that out. The other question I have is with respect to Sun Valley. So in the government's cert petition, it distinguishes the contracts in Sun Valley saying, oh, you shouldn't be, because those were between the farm and the migrant workers, right? And the government says, oh, well, the Third Circuit said that these were classic, just shouldn't think of them as breach of contract claims because the government is not a party to them. To be clear, because I did argue Sun Valley, and I've been involved in that case. So in Sun Valley, the only basis on which an alien could be admitted to the United States under that program is if they were going to work under the H-2A program, which required the employer to place certain conditions on it. So the question the Supreme Court is considering is when we condition the admission of the alien on that basis for your benefit, and then you breach the statutory terms of that, does that implicate a public right? I take the point here to be a little different. There, the Third Circuit's reasoning was the agreement between the foreign labor and the employer is the government coming in and trying to regulate that breach of contract. And the difference here is you've got the statutory scheme where Congress says, this is how we're going to run the insurance program. Here are the violations and penalties for it. And then the United States acts pursuant to that when it's the federal funds that are at stake. I take all of our points about breach of contract and how to analyze it under that. But I think that even accepting Sun Valley's reasoning is the difference there. And just on one point, Sun Valley also noted that we probably could kick them out of the H-2A program, but it said the civil monitor penalties were different, and that's why they were private right. It did not cite any authority in that paragraph. And I think that that's the reason why that decision merits further review. And it's sort of the reason why I've urged the court to consider the oceanic steam navigation, because Jarcusy reiterated that saying once something is a matter of public right, the government can enforce it with civil penalties through the executive branch. Oh, certainly look at that. No, by all means. Does this have long-term, if we were to rule against you, does this have long-term consequences for the government? Or could you just put an explicit waiver provision in the contract? I mean, I know you've kind of argued waiver. I'd also like to hear that, like, what's your best case that what you've done here actually looks like a waiver. Sure. So that's one question. But if we didn't buy your waiver argument, wouldn't you just put in the agreements, you know, the parties agree that these should be adjudicated in the in-house and that the party waives his Seventh Amendment rights or Article III rights? I mean, we uphold those in arbitration, so. So the question of whether the just a general waiver of Article III rights would be applicable is something the Supreme Court's considered in Wellness International and other things. I don't know how that would particularly apply here, absent affirmative consent. And I would expect arguments that if you. Consent in the contract? Their argument here on appeal has been that this is a contract of adhesion, and that's why waiver doesn't work. Even if we put in an explicit waiver of Article III rights in there, I would expect similar issues to come up. So I can't say definitively how this court or another court would consider it. On the waiver, the strongest case we have is the, I'm forgetting the name, it starts with a W. It's in our brief in the waiver section. It's about the Secretary of the Interior adjudicating a case under Article XV of the contract, where it said the Secretary makes the final determination. The Supreme Court upheld that, saying that that's how it is, and we only review it for  And the strongest record evidence I'd point you to would be page ID 207, where it says certain specific violations of the regulatory agreement, penalties could be as much as $25,000 per occurrence, sliding to 1735 F-15. And then the signature for Millennia Housing is immediately below that. I believe it's Frank Sineto's signature. And so at least as to those single asset entities that signed those agreements, Frank Sineto and Millennia Housing, those are the ones that committed 113 or 116 of the violations that the ALJ found. Those are the explicit waivers that are strongest. The second tier would be the operational agreements, where it says you agree to abide by all applicable statutes and regulations, and we can seek any available penalties under law. And those are signed by about another eight plaintiffs. And then another 10 plaintiffs I would take as our third tier argument, which is this is voluntary participation in the program. You're sophisticated entities. You know how this is administered. But I think all of those are just underscoring also, whether you want to think of that as waiver or not, our argument that this is a voluntary choice that you're entering into. This is not you just acting out in the world, and the government is coming in and using its course of power without your consent. Okay. Well, Mr. Aguilar, thank you very much for your arguments. We do appreciate them. And we'll hear rebuttal. Thank you. Thank you, Your Honors. Two points on rebuttal. Judge Kethledge is precisely right. It would be unprecedented to find the public rights exception here because of the breach of contract claims. We're dealing with bilateral contractual obligations between the two parties, where both are getting benefits of the bargain. And I think the argument that these are anything other than contracts is belied by the fact of HUD's own complaints in the OHA proceedings, where they expressly allege breaches of contract and obligations and the denials of the benefits that HUD bargained for. That's at 3-2 in the record. I mean, I've seen those. They also say that they're seeking these penalties, quote, under the statute. What do you make of that? Yes, Your Honor. And the court in Jharkhasi said that it doesn't matter whether the right is derived from the statute or from the common law. What matters is primarily the remedy sought. That goes to whether the Seventh Amendment is implicated. Yes. I don't really hear the government fighting much about that. We're really talking about the second question, whether the public rights exception applies. And I'm sorry. Could I get your top level question one more time, Your Honor? I forgot. I don't know. Talk about what you want. I just keep thinking that what you're saying is, if the government is seeking civil monetary penalties, the Seventh Amendment is implicated and it's not a public right. Like, those are the same questions. And I just am wondering, like, it seems to me like analytically there has to be space between those two. I think that the answer to that question is, if that's the case, there's presumptive Seventh Amendment protections. And then we go to the exception, which the court has acknowledged is an exceptionally narrow extra-textual exception, though it's not specifically defined those areas. I think those areas where the government has held dominion over the field, that's what cabined the public rights exception to. And it simply has no application here. So we would ask this court to vindicate the appellant's fundamental constitutional rights by reversing the district court and by issuing an injunction in this matter. The question was, they do at least recite in various places that they seek these penalties under the statute. I know they mentioned the agreement, too, but why isn't Mr. Aguilar correct that this is enforcement of, it's kind of what I began with, of a statutory regime that provides public benefits and, ergo, can go to the agency? I think because the nature of these claims are derived or share those similar attributes to common law claims. And what we're seeking here fundamentally is a deprivation of property, a fundamental private right. And because that's what we're dealing with here, the Seventh Amendment presumptively applies. And it's a very high bar and a narrow. So the issue is whether, to go to the analysis, the issue isn't whether the Seventh Amendment applies, it's whether the exception applies. There were no contracts. We're clearly seeking statutory damages for violation. I come back to the same question that Dworcen asked. It sounds like you're saying that. And I think... I can't be right. No, the issue that we're dealing with here, they are bilateral contractual obligations. So I think the hypothetical is not... It's not what we're dealing with in this case. But for the sake of hypothetical, I think it matters whether we're dealing with one of those areas where the government has held exclusive dominion over the field. Here, what we're dealing with are fundamentally penalties, which the court has recognized as punitive, traditional common law remedies that require this type of adjudication. The fact that it is tangentially related to a benefits program is not dispositive, as AT&T and Sun Valley admittedly going up before the Supreme Court, that proves that, at least for now, the public regs exception does not necessarily apply just by invoking some sort of public benefits relationship. Sorry to keep dragging this out. Just to follow up, let's say the statute said that... Let's say the statute conditioned imposition of these same penalties on status rather than contract, doing the opposite of what Henry Mayne... So instead of saying, if the party enters into an agreement, as the statute says, let's say it just said, if a party accepts certain benefits, like these subsidies, it is subject to all these requirements, and then let's say you have the same alleged breaches that you had in this case, and they come in, the agency comes in and says they accepted these benefits and they were subject to this regime, it's all wrapped up together, and the agency can adjudicate this. Why is that wrong? Or is that wrong? That would seem to be, in substance, kind of what we're dealing with. I think we're still dealing with the contract in your hypothetical, Judge Kepledge. We're talking about being provided some sort of consideration in exchange for something else. The subsidized mortgage insurance in exchange for providing housing stock on behalf of the government so the government doesn't have to do it themselves. Even though there's no written agreement that says contract or regulatory agreement, I think we're fundamentally still talking about a contract here, and so the Seventh Amendment would apply and the public rights exception should not. But I think we're also dealing with an action in debt in that case. All right. Well, I mean, that's a thoughtful answer. All right. Well, again, thank you both. We really appreciate it. It's a very interesting case. The case will be submitted.